**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 09-cv-02719-WJM

NORA J. MARCELLA,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION**

---

THIS MATTER is before the Court on review of the Commissioner's decision which denied Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33 and 1380-83. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision denying Plaintiff's application for Social Security disability benefits is AFFIRMED.

### I. BACKGROUND

Plaintiff Nora Marcella ("Plaintiff") was born on February 17, 1960 and was 43 years old on the alleged disability onset date. (Admin. Record ("R.") at 35.) Plaintiff has completed one year of college and has past relevant work experience as a courier, delivery driver, and laborer. (R. at 148, 152.) She claims she has been disabled since December 31, 2003 due to depression, Hepatitis C, exhaustion, and drug use. (R. at 147.)

Plaintiff filed an application for a period of disability and disability insurance benefits on September 15, 2005 and an application for supplemental security income on September 15, 2005. (R. at 24.) Plaintiff's claims were heard by the Administrative Law Judge ("ALJ") on May 22, 2008. (R. at 24.) Plaintiff, medical expert Nancy Winfrey, Ph.D. ("Dr. Winfrey"), and vocational expert Kari Jensen ("Jensen") testified[1] at the administrative hearing below. (R. at 24.) Plaintiff was 48 years old at the time of the hearing. (R. at 404.)

On June 6, 2008, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2003. (R. at 28.) At step two, he found that Plaintiff suffered from the following severe impairments: hepatitis C, anxiety disorder, major depressive disorder versus bipolar disorder, and polysubstance abuse. (*Id.*) At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet any of the impairments or combination of impairments listed in the social security regulations. (*Id.*) At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light" work as defined by the regulations, including lifting up to 20 pounds occasionally and 10 pounds

---

[1] Dr. Winfrey and Jensen testified via telephone. (R. at 41.)

[2] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

frequently; sitting, standing, and walking for 2 hours at a time for at least 6 hours in an 8-hour workday; could climb ladders and scaffold, but should not drive more than occasionally as part of her work duties. (R. at 29.) Mentally, the ALJ found that Plaintiff should be limited to work activities that could be learned within 60 days. (*Id.*) Given this RFC, the ALJ found that Plaintiff could not perform her past relevant work as a construction worker, landscape laborer, courier, or merchandise deliverer. (R. at 35.) At step five, the ALJ found that there are significant numbers of jobs in the national economy that Plaintiff can perform. (R. at 36.) Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to benefits. (*Id.*) The Appeals Council denied Plaintiff's request for review on October 30, 2009. (R. at 8.) Plaintiff then filed this action seeking review of the Commissioner's decision.

On appeal, Plaintiff argues that the ALJ made several errors:

(1) The ALJ erred in rejecting the assessments of treating doctor Arthur Ferrer ("Ferrer") and Dr. Winfrey;

(2) The ALJ erred in failing to properly evaluate the medical opinions of treating Licensed Clinical Social Worker Elizabeth North ("North") and treating Physician's Assistant Madelena Garcia ("Garcia");

(3) The ALJ erred in that there is not substantial evidence to support the Step Five finding that the Plaintiff can perform other work that is light and unskilled when the ALJ found at Step Four that the Plaintiff could not perform light and unskilled work; and

(4) The ALJ erred in making an RFC assessment that does not consider the impact of Plaintiff's mental impairment on functional ability as required by SSR 96-8p and SSR 85-15. (Pl's Opening Br., ECF No. 16 at 6.)

## II. DISCUSSION

### A. Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. Claims on Appeal

As an initial matter, the Court notes that Plaintiff is not eligible for disability insurance benefits under Title II of the Act. To be eligible for such benefits, Plaintiff had to prove that she was totally disabled before her insured status expired on June 30,

2002.  *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).  Plaintiff, however, alleged that she became disabled on December 31, 2003.  Therefore, Plaintiff does not qualify for disability insurance benefits.  The Court thus only considers Plaintiff's claim for supplemental security income under Title XVI of the Act.

## C. Weight of Doctor Opinions

Plaintiff contends the ALJ erred in rejecting the assessments of Dr. Ferrer and Dr. Winfrey.  (ECF No. 16 at 20.)

The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time."  *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996).  An ALJ, however, may disregard that opinion if it is contradicted by other medical evidence, or otherwise inconsistent with substantial evidence in the record.  *See Marshall v. Astrue*, 315 F. App'x 757, 759-60 (10th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).  The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight, if any, the opinion deserves, considering certain factors identified in the regulations. *See Watkins*, 350 F.3d at 1300-01. Treating physician opinions are still entitled to deference and the ALJ must give good reasons in his or her decision for the weight he or she ultimately assigns those opinions. *Id.* "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1301.

### *Dr. Ferrer*

Plaintiff argues that Dr. Ferrer was a treating physician and his opinion should therefore be given substantial weight. (ECF No. 16 at 26.) Dr. Ferrer completed a Mental Functional Capacity Evaluation wherein he opined that Plaintiff had extreme limitations in her ability to understand and remember detailed instructions, follow a schedule, work with others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals and make plans independently of others. (R. at 560-61.) Dr. Ferrer further opined that Plaintiff had marked limitations in, among other things, her ability to remember locations and work like procedures, carry out short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods. (*Id.*) However, Dr. Ferrer noted that Plaintiff had the mental capacity to understand, remember and carry out simple instructions, and to make judgments that are commensurate with the functions of unskilled work. (R. at 561.)

Plaintiff attested in her May 22, 2008 hearing that she had only seen Dr. Ferrer once for treatment at the Metro Community Provider Network ("MCPN") Parker Place Clinic; she normally saw a physician's assistant when visiting the clinic. (*See* R. at 44.)

In explaining the reasons for giving Dr. Ferrer's opinion "little weight," the ALJ found that the Mental Functional Capacity Evaluation appeared to be contrary to evidence considered by the ALJ in that Dr. Ferrer downplayed Plaintiff's history of polysubstance abuse, regarded it as a "past " problem, and said Plaintiff was complying with treatment. (R. at 34.) The record, however, shows that Plaintiff admitted she had been noncompliant with her prescribed medication, and that Plaintiff's polysubstance abuse was an ongoing issue. (R. at 92, 272, 295, 345, 347.)

The Court finds that the ALJ did not err in giving Dr. Ferrer's opinion little weight. Dr. Ferrer had only seen Plaintiff on one occasion, which is not documented in the record. Nor is there evidence showing that Dr. Ferrer ever reviewed Plaintiff's medical record. Thus, Dr. Ferrer's opinion is hardly reflective of a continuing observation of Plaintiff's condition. Further, Dr. Ferrer's opinion is not supported by clinical or laboratory diagnostic techniques. Accordingly, the Court finds that the ALJ's decision to give Dr. Ferrer's opinion little weight is supported by substantial evidence in the record.

***Dr. Winfrey***

Dr. Winfrey is a psychologist who provided medical expert testimony during Plaintiff's May 22, 2011 hearing. (R. at 41.) During the hearing, Dr. Winfrey testified that the evidence did not show a complete inability on the part of Plaintiff to function. (R. at 62.) However, Dr. Winfrey did opine that Plaintiff had moderate limitations on

understanding and remembering complex instructions, carrying out complex instructions, making judgments on complex work related decisions, interacting appropriately with the public, and responding appropriately to usual work situations and to changes in a routine work setting. (*See* ECF No. 16 at 26; R. at 63.) Dr. Winfrey further opined that Plaintiff had mild to moderate limitations in interacting appropriately with supervisors and coworkers. (*Id.*)

Plaintiff argues that the ALJ rejected some of Dr. Winfrey's assessments of moderate limitations. (ECF No. 16 at 26.) Specifically, Plaintiff argues that the ALJ failed to consider Dr. Winfrey's assessment of moderate limitations as to "complex instructions," "complex work related decisions," and responding to usual work situations. (*Id.* at 26-27.)

The ALJ stated in his decision that he "agrees . . . with Dr. Winfrey's testimony as a whole." (R. at 29.) The ALJ addressed Dr. Winfrey's finding of moderate limitations on Plaintiff's ability to perform "detailed" work tasks and noted that Plaintiff "appears to have only mild deficits in her ability to understand, remember and carry out 'simple' work instructions." (R. at 33.) The ALJ incorporated Dr. Winfrey's opinion into his RFC assessment. The ALJ limited Plaintiff to unskilled, "light" work that could be learned within 60 days. (R. at 29, 36.) Complex tasks and complex decisions were specifically excluded from Plaintiff's abilities. The ALJ further limited Plaintiff to work with only occasional interaction with coworkers, supervisors and the public, which further incorporates Dr. Winfrey's assessment of limitations. (*Id.*)

The Court finds that the ALJ's RFC assessment, including limitations on difficulty of work and contact with others, accurately reflects Dr. Winfrey's testimony. Accordingly, the Court finds that the ALJ appropriately considered Dr. Winfrey's testimony.

**D.     Weight of Treating Social Worker and Physician's Assistant**

Plaintiff contends the ALJ erred in failing to properly evaluate the medical opinions of North, a licensed clinical social worker, and Garcia, a physician's assistant. (ECF No. 16 at 27.)

Pursuant to Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 (Aug. 9, 2006), when rendering a disability determination, the ALJ considers all the available evidence in the claimant's case record, including, but not limited to, "objective medical evidence; other evidence from medical sources, including their opinions; statements by the individual and others about the impairment(s) and how it affects the individual's functioning; information from other 'non-medical sources' and decisions by other governmental and nongovernmental agencies about whether [the claimant] is disabled[.]"  "Acceptable medical sources" include licensed physicians and psychologists.  *Id.* at *1; *see also* 20 C.F.R. § 416.913(a).  Only "acceptable medical sources" will be considered "treating sources," who can provide the Commissioner with medical opinions, of which opinions may be entitled to controlling weight.  *Id.* at *2.

The ALJ may use evidence from "other sources" to show the severity of the individual's impairments and the impairments' impact on a claimant's ability to function.  *Id.*  "Other sources" include, but are not limited to, licensed clinical social workers and

physician's assistant. *Id.* "Information from these 'other sources' [unlike acceptable medical sources] cannot establish the existence of a medically determinable impairment[,]" but "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*; *see also Shubargo v. Barnhart*, 161 Fed. Appx. 748, 751 (10th Cir. 2005) (unpublished). However, an ALJ is not required to give controlling weight to the opinions of other sources, such as a licensed clinical social worker or physician's assistant. *Id.* Rather, the ALJ should consider information from "other sources" to determine whether such information "support[s] or contradict[s] a medical opinion." SSR 06-03p, 2006 WL 2329939, at *4. Generally, the ALJ should explain the weight given to the opinions from "other sources," "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

***Social Worker North***

North is a licensed clinical social worker operating out of the Aurora Mental Health Center. (R. at 333.) Plaintiff began seeing North in February of 2006, and continued on a weekly to bi-weekly basis through March 2008. (R. at 33.) North's notes provide a longitudinal record of Plaintiff's mental health. North's notes detail evidence of Plaintiff's recurring use of alcohol and drugs, R. at 339, 347, 354, 357, 385, 387, depression, R. at 339, 343, 367, agitation, R. at 346, 349, 371, 377, and explosive behavior, R. at 345, 361, 386. North's notes also state that Plaintiff was stable, R. at 339, 345, 350, 351, 353, 357, 362, 370, 382, and "doing well," R. at 344, 352, 355.

North discussed Plaintiff's fear and excitement about living on her own and the empowerment that independence provided Plaintiff. (R. at 363.)

North's treatment records show that Plaintiff consistently attended her appointments, and that she was responsible for herself and wanted to help care for others in her family as well. (R. 335-94.) Plaintiff traveled to visit family and for fun, and otherwise carried on daily life activities. North's notes chronicle discussions about methods for improvement, but do not indicate that North believed Plaintiff should not interact with others nor that North believed Plaintiff could not learn new things. North assisted Plaintiff in finding ways to control anger and prepare for new experiences, such as independent living and entering new treatment programs. (R. at 363, 383.)

North provided two letters in support of Plaintiff's social security disability applications. (R. at 333, 334.) In the first letter, dated September 14, 2006, North opined that Plaintiff "is unable to work in a job in which she will be able to earn any substantial income . . . ." (R. at 334.) As support, North stated in the letter that "Ms. Marcella continues to struggle with her mood despite being medicated with Lithium. Her symptoms have resulted in marked restriction of ADL's, difficulty in maintaining social functioning, and marked difficulties in concentration, persistence and pace." (R. at 334.)

In the second letter, dated February 14, 2008, North again opined that "due to Ms. Marcella's nature of mental illness, she has [sic]and is unable to find and obtain gainful employment." (R. at 333.) North cites mood swings, depression, bouts of low self-esteem, inflated self-esteem, and distractibility in support of her opinion. (*Id.*)

The ALJ gave North's letters little to no weight due to the fact that they did not appear to be consistent with North's records. (R. at 34.) North failed to address Plaintiff's history of polysubstance abuse in the letters despite its prevalence throughout the treatment notes. (*Id.*) Further, North failed to place any specific limitations on Plaintiff's activity. (R. at 33.)

The Court finds that the ALJ appropriately considered North's opinions before affording them little to no weight. Although North's notes show depression, agitation, occasional explosive behavior, and polysubstance abuse, North's notes also discuss Plaintiff as excited about independent living, entering new treatment programs, and practicing new techniques for social settings. The treatment records show Plaintiff consistently attended treatment and felt ashamed when she thought she did not meet expectations. The treatment notes do not show the severity of limitations that are indicated in North's letters.

Accordingly, the Court finds that the ALJ's decision to give North's opinions little or no weight is supported by substantial evidence in the record.

***Physician's Assistant Garcia***

Garcia is a physician's assistant working within the MCPN who provided a brief note dated February 12, 2008 stating that Plaintiff "has been unable to function properly in order to maintain a job. She suffers from depression, decrease in concentration and episodes of increased anxiety and agitation without warning. She regularly follows up with Aurora Mental Health and MCPN for care and management." (R. at 331.)

Plaintiff argues that Garcia's opinion should be given weight because she was a treating provider. (ECF No. 16 at 31.) The opinion from an "other source" may be entitled to no more weight than an "acceptable" medical source where the "other source" has seen the claimant more often "and has provided better supporting evidence and a better explanation for his or her opinion." SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006).

The ALJ gave Garcia's opinion no weight because Garcia offered no specific objective findings or functional restrictions, and because Garcia made no reference to Plaintiff's ongoing polysubstance abuse. (R. at 35.)

The Court finds little record of Garcia's history of treating Plaintiff and cannot find that Garcia's opinion should have been given any weight given the facts of this case. Accordingly, the Court finds that the ALJ's decision to give Garcia's opinion no weight is supported by substantial evidence in the record.

### E. Step Five Finding that Plaintiff Can Perform Light and Unskilled Work

Plaintiff contends the ALJ erred in that there is not substantial evidence to support the Step Five finding that the Plaintiff can perform other work that is light and unskilled when the ALJ found at Step Four that the Plaintiff could not perform light and unskilled work. (ECF No. 16 at 33.)

The ALJ considered the vocational expert's testimony, as well as the objective medical evidence and other evidence in the record in making his determination. (R. at 30.) The ALJ determined, based on the testimony of the vocational expert, that Plaintiff could not perform any of her past relevant work as a laborer, courier, or merchandise

deliverer. (R. at 35.) Although courier and merchandise deliverer, under the Directory of Occupational Titles ("DOT"), involve unskilled work, they involve regular driving and frequent interaction with others, from which the ALJ has found Plaintiff should be restricted. (*Id.*) Based on Dr. Winfrey's testimony, medical and other evidence in the record, the ALJ limited Plaintiff to "light" work activity that could be learned within 60 days, involved no more than occasional driving as part of her work duties, and involved only limited interaction with others. (R. at 72-73.)

The vocational expert's testimony provided substantial evidence in support of the ALJ's Step Five determination because Plaintiff's impairments were reflected in the ALJ's hypothetical question. *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (affirming ALJ's findings where hypothetical question reflected limited nature of plaintiff's impairments). The vocational expert identified three jobs that a person with Plaintiff's RFC could perform, and testified that there were no discrepancies between her testimony and the DOT. (R. at 73.) "Once the [vocational expert] stated that [s]he was relying on the DOT, the ALJ had no further duty to investigate." *Gibbons v. Barnhart*, 85 F. App'x 88, 93 (10th Cir. 2003) (unpublished).

In comparing Plaintiff's past relevant jobs to the three jobs identified by the vocational expert, the Court notes that as an electronics worker, production assembler, or as a housekeeper/cleaner, Plaintiff would have limited interaction with others, not have to drive regularly as part of her work duties, and could easily learn the positions in question. Accordingly, the Court finds that the ALJ's Step Five determination is supported by substantial evidence in the record.

**F.     RFC Assessment**

Plaintiff contends the ALJ erred in making an RFC assessment that does not consider the impact of Plaintiff's mental impairment on functional ability as required by SSR 96-8p and SSR 85-15.  (ECF No. 16 at 36.)  Specifically, Plaintiff argues that the ALJ incorrectly determined that Plaintiff could perform a job that would take up to 60 days to learn.  (*Id.*)

Within the DOT are Specific Vocational Preparation ("SVP") categories.  "SVP is defined as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'"  *Dikeman v. Halter*, 245 F.3d 1182, 1186 (10th Cir.2001) (quoting United States Department of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. B, B-1 (1993)).  The three jobs identified by the vocational expert had SVPs of 2, which is defined as anything beyond short demonstration up to and including 1 month.  These jobs were also identified as unskilled, which is "work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).

The ALJ acknowledged that the medical evidence shows Plaintiff is capable of unskilled work.  (R. at 36.)  Using the skill level definitions provided in the Commissioner's regulations at 20 C.F.R. §§ 404.1568 & 416.968, "unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  SSR 00-4p, 2000 WL 1898704

at * 3 (Dec. 4, 2000). "An SVP level of 3 means that the lapsed time required to learn the job is '[o]ver 1 month up to and including 3 months.'" *Dikeman*, 245 F.3d at 1186.

An ALJ must make specific RFC findings based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996). Those findings must be supported by substantial evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). The ALJ is responsible for the RFC assessment. 20 C.F.R. § 404.1546(c).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence ... the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis ... and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96–8p.

The Court finds that the ALJ appropriately limited Plaintiff to unskilled, light work that could be learned within 60 days. The ALJ took into account Dr. Winfrey's testimony, medical evidence and other evidence showing that Plaintiff had limitations in dealing with complex tasks and complex decisions in making his determination. The ALJ further took into account the evidence of Plaintiff's anger and road rage incidents in limiting her to jobs that required no more than occasional driving as part of her work duties and limiting her interaction with others. (R. at 29.) Accordingly, the Court finds that the ALJ's RFC assessment is supported by substantial evidence in the record.

## III.  CONCLUSION

The ALJ's denial of Plaintiff's applications for disability insurance benefits and supplemental social security income is supported by substantial evidence in the record and free of legal error. Accordingly, the Commissioner's decision is hereby AFFIRMED.

Dated this 16th day of September, 2011.

BY THE COURT:

William J. Martinez
United States District Judge